Good morning, Your Honors. Stephen Lubliner on behalf of Appellant Tino Pese. May it please the Court, we're here this morning on the first prong of the Batson inquiry. Much is satisfied. We have three African-Americans who were excused during jury selection by the prosecution. We know from Batson and the cases citing it, out of common sense, that the preemptory challenge process is an opportunity for mischief. I'll be talking primarily about the remaining permissive inference aspect of Batson. I'll be leading into why I think Judge Kaczynski's approach in the Shirley case was correct. And I'll be summarizing a few other areas that are not in dispute. Prima facie is a nice Latin term, basically means at first blush, at first glance. More colloquially, it means, yeah, maybe, I can see that, and it's rebuttable. More colloquially, I'm willing to be convinced otherwise. Show me. That's the second prong of the Batson inquiry that we never got to. Now, I think there are some assumptions that we need to bear in mind in getting to the, yeah, maybe, in the first prong of the Batson inquiry. I don't think a Batson inquiry can be conducted, even in the 21st century, ten years ago or now, as if society was completely colorblind, as if you pointed out to a prosecutor that he was looking at African-American jurors as he was conducting his jury selection. We should not be shocked to think that this happens frequently. We should not think that it's the rare prosecutor. Sotomayor, the prosecutor removed three out of the five African-American prospective jurors, is that correct? Is that how you would characterize it? I would characterize it that he removed three out of the four that he could really get his hands on. You're talking about Cooper, Mills, and Lewis? Yes, Your Honor. And he left, I forget his name, already one African-American juror was on the, was going to be in the jury, is that correct? One African-American juror ultimately served. If the cases are clear, that that does not defeat the finding. That the prosecutor did not strike. Yes, Your Honor. All right. So three out of the remaining four or three out of the total five, does that create a disproportionate number of statistical disparity? And if it does, do we need more than a statistical disparity, something else? And if so, what was there to raise a prima facie case? Well, I think you have the statistical disparity. I think the meaningful number here is three out of four, not three out of five. The defense struck Mr. Shives. I believe he was their first challenge. The prosecutor had stricken another juror as its first challenge, did not elect the opportunity to strike the black man as its opening did. I don't think that really factors into our inquiry in any meaningful way. Looking at the case in the Shirley case, what Judge Kaczynski basically did, he said, well, we have Batson. We have the lesson that it's an opportunity for mischief. The prosecutor in Shirley struck two out of the three black jurors that he could get his hands on. One ultimately served. We have three out of four. One ultimately served. Judge Kaczynski said, well, he took a quick look at the voir dire and the questionnaires. He said neither of these people had two heads. Who took a quick look? You said he. Who? Judge Kaczynski. All right. In that case. He basically said, you know, I'm paraphrasing, but neither of these people have two heads. I can see, you know, maybe some prosecutors might look at this, some might look at that, but the court of appeal in the lower court was wrong to pick and choose potential justifications. Are you telling us there's some rule that comes out of this Judge Kaczynski case that you're citing that necessarily means that we rule in your favor in this case? Well, I think that that case just applied the general principle, which that courts are. We know what the general principles are. Among other things, the Supreme Court has told us that we rely in large measure on the observations of the trial judge who's on the scene. Is that right? We rely – well, we rely in large parts on the observations of the trial judge who's on the scene, primarily once the prosecutor has stated his reasons, and then it becomes a credibility determination, the defense counsel after the prosecution Well, and here the trial judge concluded, after looking at Voirdier and the questionnaires, that adequate reasons other than race did exist for exercising these challenges. But that's not the standard under Johnson. Well, and then he points to Lewis's rather strange you-figure-it-out answer, which is an interesting answer, Mills' misinformed answer about the defendant's right to remain silent, and Cooper's son, which was in prison, and there's a concession on that anyway. But, I mean, these seem to stand as the reasons that they – that were used to make the rulings the judge made. Is that right? Those were not the prosecutor's stated reasons. The prosecutor adamantly refused to state his reasons. He waxed indignant, invoked his ethics, and, you know, played hide-the-ball. And I submit that his response is also circumstantial evidence. Well, he was – he was – what was he contending when he did that, that there was no prima facie case? He was contending that there was no prima facie case. He did not say why. He made some general boilerplate objection to meaningless Batson motions. He waxed indignant, took personal offense. He invoked an outdated legal standard from the Swain case. I may be busy prosecuting criminals, or has that law changed, continuous and systematic exclusion? And that is also circumstantial evidence that he was playing games in jury selection. The case is – Well, you know, if you go to the statistics, it kind of depends on which way you count. If you count five, and you concede that one was justified, you only got a 40 percent strike. Well, I don't count five, and as far as – as I say in the reply brief, what was done with Ms. Cooper was kind of a non- Well, you can't count Cooper. You can't count Cooper, really. Everybody concedes that that was a legitimate strike, right? I don't know that everybody concedes that that was a legitimate strike, as opposed to conceding that you can look in the record and see why the prosecutor might have stricken her. The cases from Johnson v. California, Supreme Court case, down to Ninth Circuit cases, they all say, and Judge Kaczynski applied that rule in Smiley with similar sampling as we have here, that you cannot, however reasonable, however attractive it might be, mine the voir dire record for things that the prosecutor might have taken – taken offense to. You have to hear the prosecutor's reasons, and then it becomes a credibility determination. Maybe at that point you conduct a comparative analysis inquiry, and it becomes a more full-blown inquiry. But you do not, the trial court does not get, the court of appeal did not get, the district court here was not authorized to say, you know, I can see this might bother someone about Mr. Lewis. I can see why Ms. Lewis, Ms. Mills is young, and so on and so forth. She's a dog person, he's a cat person. It doesn't – those are not – that's not the Batson inquiry. And that's what has consistently happened here. Maybe I don't understand the case. The judge ruled that there was the – that there was a prima facie case. Is that correct? Yes. And just it seems to me that it was almost a knee-jerk kind of a statement. And then the prosecutor said, in effect, no, there's not. So the judge then listened to what all this stuff was, and the judge then looked at what was in front of the judge and reversed himself and said, no, there isn't the prima facie case. The judge looked at responses of the particular gentleman. The questionnaires and some of the facts in front of him and decided there's not a prima facie case. Is there a – maybe I've missed it. Is there a rule that says in the determination of whether there is a prima facie case that the prosecutor must at that point advance legitimate reasons for what the prosecutor did? I'm under the impression – maybe I'm wrong – that you wait until you get past the prima facie case. And here what happened was the judge, on reconsideration of what he originally said, concluded there wasn't a prima facie case. And when the defense attorney was asked for his input, he had nothing to add, zero. Well, he does not – he does not need – it's not an attractive, inspiring presentation. I don't have anything to – here's his quote. When asked to respond to the prosecutor's defensivist challenges, counsel's response was, I don't have anything to say at this point. It seems like it was just a pro forma wheeler-batson motion, if you can call it that. Well, not every motion that goes on in trial court, whether they're evidentiary objections or argument of prosecutorial misconduct objections during closing argument, some of them come off as rote, some of them come off as inspired by a sense of justice, but they're all legitimate legal arguments, and they have to be ruled on according to the applicable and appropriate standards, and that did not happen here. This is true. And when the defense attorney was asked, you know, what about all of this, the defense attorney said, I don't have anything to add. Well, the defense attorney – Later on simply argued that the striking of one juror can be enough, but there was no – there was no beef in the argument. It just made the argument, said I don't have anything to add, and one person's enough, and thank you very much. The judge upon whom we rely took a look at it, looked at the voir dire, looked at the questions, spotted these problems, and said, hello, I don't think there's a prima facie case, so we don't get to Step 2. Well, it's not for the judge to spot these problems in the voir dire. Let me turn it around and say something. Well, who decides whether there's a prima facie case or not? The judge. All right. Applying the standards in Batson, which says there's members of cognizable racial groups stricken by the prosecutor in a proceeding which is an operative rife with a potential for mischief. We had three out of the four prospective African-American jurors that the prosecutor got his hands on, and he struck them. They didn't all come up in the box one after the other. Doesn't matter. It was a very basic thing. It's like asking for an offer of proof on an evidentiary objection. Counsel, do you plan on tying this up later? If the prosecutor in such a situation had said, Your Honor, I'm offended. I'm ethically obligated to. Well, can I have an offer of proof? No. Well, then forget it. That would be a very strange thing to have happen in a criminal trial. And what happened here is the judge backtracked, and he did what all these Supreme Court cases, Ninth Circuit cases say you don't do, is you don't look at the voir jury selection and you say, well, this could have been a reason or this could have been, you know, so forget about it. You put the prosecutor to his proof, and as I believe defense counsel said at some point, he could have stated his reasons in much less time than it took him to pick this big fight. If you're right, the judge never did that before he ruled there was a prima facie case. He just said there's a prima facie case. And now, then they got into whether there was or whether there wasn't. Well, you know what the case was. Well, in these samplings, 3 out of 4, 2 out of 3 in the Shirley case, well, 3 of the 4. I mean, we can look at it the other way. If we say that Ms. Cooper is so off the chart, then it arguably becomes 2 out of 3, just like in Shirley. The judge said she was stricken. The judge said she's reversing because she does see some reason. I think she made a reference to some reasons. And the inference is that why the prosecutor may have struck the jurors that it did. But was it ever stated what those reasons were by the judge, by the prosecutor, by anybody? No, there was a lot of, well, I can kind of see reasons for Ms. Cooper, and I can kind of see reasons for Ms. Mills. And the prosecutor never said, well, I'll tell you, she's this and he's that. And there was never any the prosecutor just enjoyed the fact that the judge was backtracking, refused to say anything about Ms. Mills, and we ended up with no finding, and the case went on. Ms. Mills was a 24-year-old young woman. Was she the young woman? She was the young woman, yes, Your Honor. Were there any reasons ever given for the young woman? Not by the prosecutor, no. The district court speculated that maybe because she was young and she had never been to even been to junior college, and she said this on her questionnaire about the presumption of defendants not having to testify, which, you know, I don't think it's relevant at the prima facie stage, as opposed to the ultimate burden comparative analysis stage. Plenty of jurors said things that were not consistent with a fully legal-educated person's understanding of standing on the prosecution's proof and the defendant not having to testify. It's not relevant or necessary at this point. The statistical sampling that we have in this case is fully consistent with what we have in Shirley, with what we have in other cases, three out of five out of six, five out of nine in the Turner case, two out of three in the Shirley case, three out of four here, I submit. These are not going to be huge, huge, huge, huge samplings. Where we get some break-off is where you have just a single challenge. You know, a few minutes ago, you said that there was no concession. I read your brief on page 15, referring to, it says, I quote, it noted that Peace had conceded that the prosecutor had justification for removing Cooper. It's like I don't even know what's the idea. That happened, and the defense counsel backed off of it, the court of appeal, the appellate counsel backed off of it. It's an idle act. You told me earlier that there was no such concession. But there was a concession. It depends on what you characterize a concession in light of the appropriate standard. What you have is a prosecutor striking African-American jurors, three out of four. We have one woman who's had negative, at least for her children, some negative experiences with the criminal justice system. I suppose it all depends on what our main concern about racial bias in jury selection is, if it means that any time an African-American juror has had bad experiences with State-sponsored discrimination and doesn't think, well, that's okay, that they get to get kicked off the jury, she was a black woman, she was an African-American. Kagan. Roberts. Well, no, it's been fine if it would have been fine if it would have been fine if it  would have been fine. May it please the Court, Peggy Ruffray from the Attorney General's office for Respondent. Your Honor, the district court properly concluded that the defense failed to show a prima facie case of racial discrimination in this case after considering all of the relevant circumstances, which is required by Batson at the Stage 1 level. Now, the first relevant circumstance is that the defense clearly made a pro forma motion in this case. Well, but look, I was there. It sounds like many of the Wheeler motions that I used to hear when I was trying cases. I mean, they stand up and they make a Wheeler motion. They sit down. Although this one, the unusual thing about this particular one is that then once the prosecutor said, I don't think he has made a prima facie case, and discussed that at length with the judge, the judge then turned back to the defense attorney and said, what do you have to add? And he literally said, I don't have anything to say at this point. I've made my motion. And the story. That's kind of when it became a pro forma motion, at that point. Yes. Yes. All right. And the fact that you could commit to a criminal case is not a criminal case. I'm sorry. When you say pro forma, I mean, he noted the number that have been of African Americans that had been struck, and in the record I thought that was a reference that he said, well, I've seen the last four remaining African Americans. He struck three. He's – I think he made a reference that didn't see a reason for striking one or two of them, so I'm making a bad sentence. He didn't actually go that far. Wheeler. I'm paraphrasing. I apologize. He didn't actually go that far. This is at the ER-57. All he said was, as to Juror Lewis, there doesn't appear to be any outstanding reason. As to Juror Mills, she was excused for no reason that was particularly apparent. What should he have said? Well, especially once the judge came back to him and said, what about this, sir, then he could have made his record of whatever he thought it was. Which would have been, I mean, what? Well, it's not for me to say what he could have been thinking in his mind of what he thought the prosecutor's racially discriminatory reasons might have been. I don't know because the prima facie case, though, and I'm just struggling a little bit here, because at that point, and I think the case law says, I mean, you don't have to show much. It's a very low bar. It is a low bar, but in the end, it's complicated by the fact that the trial judge initially made a prima facie. The prosecutor had a curious overreaction of indignancy. I'm a little concerned that this is going to set some precedent that when somebody makes this motion, the prosecutors can just say, hey, I'm offended, I'm not a racist. I mean, this is a very odd reaction by the prosecutor. It looks like the trial judge was affected by that. Looked for the record, through the record furiously, seeing, you know, what was there, but never, after making a prima facie, kind of looking over, she says, well, I see some reasons, but I still don't see one reason, or there's still something that's left unanswered, but I'm going to reverse my decision anyway, and there's never a record made of what the reasons are. And it seems like that's what the case law would require, perhaps, under these circumstances. Well, I think the prosecutor was asking for reconsideration because it was so obvious the reasons why he had excused these African-American jurors. And the trial judge said to the one, yes, it was just as to the one Mills, as to the And the trial judge even agreed several times that there were obvious, clear reasons why he had excused those. And, in fact, the judge ultimately, before reversing himself, said, you're right as to those two, I clearly see why you excused them, so there might be something as to this one left. And then as the colloquy went on, and he turned to the defense attorney and said, what about it, and he said, I have nothing to say at this point, then the judge ultimately reversed himself as to that juror as well. Was Mills the one who was confused about the right to remain silent? Yes. And she was the one who was by far the youngest juror at age 24. She lived at home with her mother and had only a high school diploma. I would have thought the defense would have liked to get rid of that juror who said the defendant has no right to remain silent, but that's irrelevant. Let me move on to some of the other relevant circumstances that I think support this no prima facie finding, which is the next one is the statistical analysis. And I'm aware of, I believe it was what Mark Twain said about statistics, but I think in this case it does require a little bit of clarification. First of all, the only jurors, I think, that are at issue, we have to think of these two, because the defense didn't even argue that Juror Cooper was one of the ones that should be considered. At the beginning, I'm talking about the defense attorney at trial. They only said there was a potential problem with jurors Lewis and Mills. They weren't even saying that there was a racial reason for excusing Juror Cooper. And then, of course, the defense conceded that there was no racial reason for excusing her in both the State court and in the district court. So everybody was on the same page that she was excused for a legitimate reason. So I think that has to be taken out of the statistical analysis. So does that leave you with four or three? Well, then the defense, the prosecutor struck these two that are at issue. However, he left one of the black jurors on the jury, and he also left a black lawmaker on the jury. There was an alternate. Yes. Nobody knows at that point, but that person very well could have served on the jury too. So I think that it's certainly significant that there was a black alternate on the jury as well. So how do you come down with your statistical argument? I mean, are you going two out of five, two out of four? Well, two out of five, I think, is the most reasonable. Also remember that the prosecutor exercised a total of 14 peremptories. So when you're looking at the big scheme, it's only two out of 14. And you can also consider the pattern of peremptory challenges. These two that were at issue, those were the fourth and fourteenth peremptory challenges that he exercised, unlike a case versus Williams v. Runnels, where the first three of four peremptories were against black jurors. So that is another one of the relevant circumstances that the Court considered in this whole statistical analysis in trying to determine if there was a prima facie showing made. And I think that, as Judge Trott indicated, we do have to give a lot of credence to what the trial court was doing. Batson itself says, and this is specifically as to the Stage 1 prima facie case, we have confidence that trial judges experienced in supervising Vordeer will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors. So this was the trial judge who was present during all of the jury selection. He was well aware of Cooper's hostile and confrontational answer to whether he had ever experienced any kind of racial discrimination when he said, I'm 62 and black, you figure it out. And this was the same juror who had previously served on a criminal jury that was hung. So there was an obvious reason that there is no reason to consider these racial neutral reasons for removing the African-American jurors prior, you know, at Step 1. I thought we had to wait. Not typically, but in this particular case where the trial judge, at the time of making this prima facie determination, said, I believe it's obvious why you excused that juror. So it's a little bit different from some of the other cases. Sotomayor, how's that? Paulino, how can you distinguish Paulino for me, then? Because the Paulino case seems to say that, you know, we have to hear the reasons at that point. I mean, at the third, at Step 3, I guess, after the prosecutor. Correct. And I think that is typically the case. But that's — that was saying that the reviewing court can't come in and supply reasons later on. But the reason I believe this situation is distinguishable is because this is at the time of the — when the determination is being made, and it's the trial judge who is observing all of this saying, I understand, I'm taking that person out of the equation. It's hard to quite figure out how to analyze the statistics in this case. I mean, and because it's such a small sample size, it makes a big difference. So if you count Cooper and you count the alternate, you got 2 out of 5. If you take her out of the equation — Cooper out of the equation, I'm sorry, because it's conceded, then you got 2 out of 4. And if you take the alternate out, then it's 2 out of 3. And that seems to make a difference statistically. So I'm not sure where to — where we come down — where we ought to come down on that. Do you think there's a reasoned principle that in statistical analysis you remove the conceded jurors, or not? So does Cooper stay in or not, in terms of the statistics? I think she clearly cannot be considered, and I think the case that supports that is — Isn't it better for you if she is considered? Number-wise. Number-wise. But if she can't — Oh, if she is considered as one of the — yes, of course, yes. What's the case? The case is — Well, I thought I — You can supply it to the clerk afterwards. It's cited in my brief. And I thought I had it at my fingertips. But it was one where the — this Court, the Ninth Circuit, had — there were two black jurors. One, the defense did not challenge as being excused for a racially motivated reason, and the Court did not consider that in the statistical analysis. There are some other considerations. Again, it's a global test here, all relevant considerations. The — I'm a little confused about what the defense's argument about comparative juror analysis is, because he initially said the Court is required to do it, and in his reply brief he seems to be saying the Court can't do it. I agree that it seems to be a little bit problematic at a Stage I analysis, but I think that the best way to read the cases from this Court that say that it can be considered are — it can be considered only as to some sort of objective evidence or extrinsic evidence. In Boyd v. Newland, what they were talking about was the actual juror notes and let's see — oh, Crittenden was the case where they were talking about juror notes, and there were no juror notes in this case. So if the problem is that you can't make the comparison of the stated reasons because they haven't been given yet, then I think we have to excise all of the discussion about whether these other jurors were two-headed or whether they were revolutionaries. That kind of a comparative juror analysis just doesn't apply at this stage. So you're — that — I think you have to excise most of that from this case. Well, it's not a transcript. I mean, it's — it wasn't a clean Batson — resolution of the Batson-Wheeler challenge. I mean, he didn't say, okay, now we're at Stage I, now we're at Stage II. He says, all right, we've passed Stage I, the prosecutor explodes, makes all sorts of comments about being, you know, goes down the road, and then he says, well, let's hear the reasons. And then he says, okay, and there's — now we're back to Stage I again. It's just not a clean analysis. But I have to take it for what it is. I agree. I agree. But given the fact that the trial judge, again, that's who the Supreme Court has said we have to put most of our confidence in that person. And the trial judge was the one who listened to the prosecutors, pushed back on whether there was a prima facie case, turned to the defense attorney, got nothing from them, reviewed the juror questionnaires, considered what every — what everything else that had gone on, and at that point found that there was no prima facie case. And I think that that's what this Court should uphold in this case. Any further questions? No. Thank you. Okay. You have 17 seconds. 15. I expected a fight about statistics. I thought we'd be past validating what the trial judge in the district court did. Johnson, quote, That's a framework designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury process. Johnson v. Fink, saying that the State, quote, That's what happened in the district court. That's what happened at the trial court. I want to comment about the pattern of — of — of preemptory challenges here. You take your prospective jurors as you find them. The prosecutor could not have, as a courtesy, called all the black people up first so he could get rid of them. Would it be a better record if he had? Sure. Would it have been a better record if he had spoken disrespectfully? Sure. But this case is about statistical disparity. In Williams v. Reynolds, to result in inference of discriminatory purpose based on statistical disparity, the other relevant circumstances must do more than indicate that the record would support race-neutral reasons for the question challenges. The prosecutor had to state his reasons, and then it would become a credibility case. I'm a little troubled by Your Honor's comment that the prosecutor remarked, oh, I'll have to check my notes, and — and believing him here on the cold record. Because when I read that record, I say, well, yeah, maybe he has to check — maybe he has to check his notes. Maybe he is genuinely offended. Maybe he did misunderstand the standard of proof. Or maybe he is playing a game. Maybe he's pretending. Oh, were there black people on the jury? Who knew? Oh, am I really offended, or am I just fighting back? Who knew? And so on. Your time has expired. All right. Thank you, Your Honor. We gave you a little extra time. Thank you. The case that's heard will be submitted for decision.
judges: Trott, Thomas, Murguia